IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PATRICK J. CHAREST, #182262, :

    Plaintiff, :

vs. : CIVIL ACTION 20-0214-TFM-N

KAY IVEY, *et al.*, :

    Defendants. :

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff Charest's amended complaint. (Doc. 26, PageID.467).[1] The Court is required to screen the amended complaint because Plaintiff met 28 U.S.C. § 1915(g)'s exception of being "under imminent danger of serious physical injury" at the time that he filed the complaint and is now proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. After careful review, it is recommended that the amended complaint be denied.

**I. Amended Complaint.** (Doc. 26).

In the original complaint, filed on April 7, 2020 (Doc. 1 at 13, PageID.13), Plaintiff sued Defendants Governor Kay Ivey and Warden Mary Cooks at Fountain Correctional Facility ("Fountain") for their failure to protect him and

---

[1] This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and United States District Judge Moorer's order of April 23, 2020 (Doc. 3, PageID.23).

1

other inmates from Covoid-19 by not providing testing and preventive supplies and services, for their "deliberate indifference to imminent danger of physical danger/death from Covid 19," and for a declaration that 28 U.S.C. § 2244 violates the First and Fourteenth Amendments and is, therefore, unconstitutional. (Doc. 1 at 11, PageID.11). For relief, Plaintiff sought a declaratory judgment and a preliminary injunction for "emergency Covid-19 testing [an]d prevent[ive] services [and] supplies for living areas, kitchen, etc. . . ." (*Id.* at 13, PageID.13).

In the amended complaint (Doc. 13, PageID.467), Plaintiff names as Defendants Governor Kay Ivey, Alabama Attorney General Steve Marshall, Commissioner Jefferson Dunn, and Warden Mary Cooks, in their official capacities, and asserts the amended complaint relates back to the original complaint. (*Id.* at, PageID.467). Plaintiff alleges that "[s]ince filing[,] matters of confinement have grown worse, defendants are . . . failing to adequately provide protection, safety, security, from prisoner[-]on[-]prisoner violence, as a direct result of both staff shortages and BCO[s] (Basic Correctional Officer) abandoning their assigned posts (Dorms). . . ." (*Id.*). He asserts that Defendants fail to correct "the ongoing assaults, robberies and stabbings from prisoner[-]on[-]prisoner violence. . . ." (*Id.*). He maintains that "the violence [occurs] as a direct result of the acts or omissions by said defendants [being] absent on their post, . . . which has caused systemic deprivations." (*Id.*). And "defendants are stalling to avoid remedial sanctions by federal intervention. . . ." (*Id.*).

2

According to Plaintiff, Fountain was designed to house 532 inmates but now houses 1200 plus inmates, which prevents him and others from socially distance themselves with regard to Covid-19 and the violence. (*Id.* at 2, PageID.468). Level 5 inmates, serving a "life without sentence," have been added by Defendants to Fountain's Level 4 inmates like him and Level 2 or below inmates, who are work-release inmates, which endangers Plaintiff and staff. (*Id.*).

Adequate safety, security, and sanitation have not been provided by Defendants since October 2018, when he arrived at Fountain. (*Id.*). According to the DOJ's lawsuit, 825 assaults occurred from September 2019 to June 2020, and 23 inmates have been killed since 2019. (*Id.* at 4, PageID.470). Inmate deaths are at an all-time high in Alabama's prisons, which is the highest of all states. (*Id.* at 3, PageID.469). As of October 2019, ADOC ceased reporting publicly serious injuries to avoid incriminating themselves. (*Id.*). Assaults, stabbings, and robberies are at an all-time high, from one to two assaults a month to four or five assaults a day for the past eight to twelve months, and most assaults go unnoticed for fear of inmate or guard retaliation. (*Id.* at 2-3, PageID.468-69). And Defendants have not corrected the deficiencies in the Department of Justice's (DOJ) notice issued in spring 2019 after its investigation. (*Id.* at 2, PageID.468).

Since Covid-19 struck Fountain in spring 2020, the assaults, stabbings, and robberies have increased because when an inmate tests positive for Covid-19,

3

Defendant Warden Cooks and Wexford, Inc. lock down the entire dorm where the inmate has slept, not the dorm to which he was assigned. (*Id.* at 3, PageID.469). The increase in violence can also be attributed to the mixing Level 5 inmates with Levels 2 through 4 inmates. (*Id.*). The fear of being assaulted, stabbed, or robbed is based on BCOs abandoning their posts, staff shortages, and the failure to hire, train, and manage subordinates. (*Id.*). Moreover, inmates make weapons for their protection as they have "unfettered access to raw metal/iron" for making knives and to brooms and mops whose handles are used to make "billy clubs." (*Id.* at 3,7, PageID.469, 473). Defendants cannot protect Plaintiff, as described above, and he will not fight back; thus, the Court needs to intervene or ADOC will continue to deprive Plaintiff of his Eighth and Fourteenth Amendment rights. (*Id.* at 3-4, PageID.469-70).

Because Plaintiff is in the "Caucasian" minority at Fountain, he is being deprived of adequate safety and security, as race plays a huge part of who is attacked and protected. (*Id.* at 4, PageID.470). He has witnessed "white boyz" get assaulted, spit on, stabbed, and robbed due to their drug addictions or simply for being "Caucasian." (*Id.* at 3, PageID.469). Defendants "will continue to omit providing safety, security, protections for said minorit[ies] at Fountain due to systemic racism, deeply rooted into the South's revenge against 'Caucasians' which Plaintiff remains." (*Id.* at 5, PageID.471). And complaining does no good. (*Id.*). He is constantly subject to threats of violence and bigotry when he

4

attempts to eat, shop at the canteen, shower, or use the toilet by the "majority" or the "mentally-ill," causing him to forego hygiene and "body functions." (*Id.* at 7, PageID.473). Since Defendants have taken over, the violence has damaged his psyche. (*Id.* at 4, PageID.470).

Currently, the staff consists mostly of BCOs, who are females and are ill-equipped to manage the violent inmates at Fountain, which causes unreported assaults, stabbings, and robberies, as they are allowed to abandon their posts in the dorms. (*Id.* at 4, PageID.470). Many of the BCOs stay in the hallway about 30 to 40 feet away from the dorm due to their mistreatment by the "majority." (*Id.* at 8, PageID.474). Additionally, supervisors have told them not to enter the dorm during a fight or when an inmate is "wigging out" due to an allergic reaction to a drug. (*Id.*).

Defendants' practice is to not accurately report crimes, assaults, stabbings, or robberies to I & I or the Escambia County District Attorney's Office; to permit drugs, which causes assaults, stabbings, and robberies to proceed uninterrupted by the BCOs who have abandoned their posts; and to "refuse to accept reports of said violence at Fountain. . . ." (*Id.* at 6, PageID.472). When the violence is brought to "their" attention, the assailants, through manipulation, are placed in Fountain's RTU (Residential Treatment Unit) or SU (Stabilization Unit) where a psychologist or a psychiatrist visits them, and after being in isolation for several days, they are released to general population, which results in "widespread fear,

5

threats of violence, re-gaining control over the minority – elderly." (*Id.* at 6, 9, PageID.472, 475). Inmates who are released from segregation, RTU, and SU are permitted to take up residency in Plaintiff's dorm even though they are not assigned to H-Dorm. (*Id.* at 9, PageID.475). Within the last two months, Plaintiff barely avoided being assaulted and being stabbed by these unassigned inmates who get high on drugs. (*Id.*).

Defendants know that inmates use large quantities of drugs but refuse to intervene and stop their influx, which is the primary cause of the criminal activity inside ADOC. (*Id.* at 6-7, PageID.472-73). Plaintiff must live in this environment 24/7 where there are no legal consequences and criminal activity is rewarded. (*Id.* at 7, PageID.473). Defendants have failed to abate the entry of drugs and the making of weapons even though the supervisors report this information to the wardens, who in turn inform the Commissioner, who reports to Governor Ivey. (*Id.* at 8, PageID.474).

Plaintiff claims that he is being subjected to cruel and unusual punishment due to the crowded conditions in that he is not afforded "safety, security and protection." (*Id.*). His equal protection rights are being violated, as inmates with "antisocial proclivities" are allowed to wreak havoc on the "Caucasians." (*Id.*). He is also disabled and elderly. (*Id.*).

With staff shortages and Fountain being overcrowded, conditions are dire. (*Id.* at 9, PageID.475). Plaintiff wants the Court to take judicial notice of *USA v.*

*State of Alabama and ADOC, et al.*, 20-cv-01971-JHE (N.D. Ala.), as underpinning his facts. (*Id.*). He adopts and incorporates the DOJ's "reports and lawsuit for its authenticity due [sic] appointment for a three[-]judge court, in accord with § 3626." (*Id.*).

Furthermore, Plaintiff suffers from Defendants' failures to provide him with accommodations, services, and programs under the ADA and the Rehabilitation Act, as required by the *Braggs v. Dunn* consent decree. (*Id.* at 5, PageID.471, noting Plaintiff's arbitration action).

For relief, Plaintiff request the Court to issue a preliminary injunction or restraining order until the Northern District is satisfied that the men in Alabama's prisons, including Plaintiff, a minority, are provided safety, security, and protections from Defendants' acts or omissions. (*Id.* at 10, PageID.476). In addition, Plaintiff requests a declaratory judgment. (*Id.* at 13, PageID.477).

**III. Discussion.**

When Plaintiff filed the original complaint on April 7, 2020, against Defendants Ivey and Cooks, his claims were concerned with being protected from Covid-19 and requiring prison officials to protect him. Almost nine months later, Plaintiff filed an amended complaint adding two Defendants, Commissioner Dunn and Attorney General Steve Marshall, and seeking protection from violence at Fountain that has been brought about from overcrowding, understaffing, inexperienced staff, illegal drug activity, deficient classification, prison-made

7

weapons, and racial issues. Limited references to Covid-19 are made in the amended complaint in an apparent attempt to connect Covid-19 in some form to the violence he complains about, with the chief reference being Defendant Warden Cooks and Wexford, Inc. closing down a dorm when an inmate who tests positive for Covid-19 has slept there. (*Id.* at 3, PageID.469). Nonetheless, the majority of the amended complaint's claims are not related to the claims in the original complaint.

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992). "[A]n affirmative causal connection [is required] between the action taken by a particular person 'under color of state law' and the constitutional deprivation." *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.), *cert. denied*, 464 U.S. 932 (1983). This causal connection is required to be established regardless of the relief requested. *Id.* at 1383 (citing *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1979), holding the causal connection requirement extends to requests for injunctive relief). Although, "when individuals are being sued in individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken ... where only declaratory and injunctive relief [are] sought for

8

constitutional violations pervading an entire prison system." *Id.* at 1383.

In addition, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation[,]" such as the supervisory official's policy or custom. *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.) (a history of widespread abuse may put a supervisor on notice to take corrective action and failing to do so creates liability), *abrogated on other grounds by Randall v. Scott,* 326 F.3d 1352, 1369 (11th Cir. 2003); *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986); *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.), *cert. denied,* 500 U.S. 933 (1991). Liability, however, cannot be imposed against supervisors in a § 1983 action for the "acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone*, 326 F.3d at 1360.

Turning to the amended complaint, Plaintiff refers to "the defendants" together as a group throughout the amended complaint except in two instances when he referred to three Defendants individually, either by name or position, when he alleged that each one had notice of homemade weapons and to Defendant Cooks for closing down a dorm where an inmate who tested positive for Covid-19 had slept. (Doc. 26 at 3 no.8, 8 no. 19, PageID.469, 474). In neither instance is a claim stated, however. *See Sandin v. Conner*, 515 U.S. 472, 486, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995) (confinement to disciplinary segregation for

9

thirty days did not violate the due process clause); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (the Constitution does not require a prisoner be confined in one particular institution); *Cottone,* 326 F.3d at 1360 (notice is one element of a claim to create liability). Therefore, because Plaintiff has not demonstrated a causal connection between *each* Defendant's acts, omissions, policy, or custom and deprivation of his constitutional rights, he has failed to state a claim for relief under § 1983. *Zatler*, 802 F.2d at 401; *Williams,* 689 F.2d at 1380.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be "freely given," except in the presence of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]'" *McKinley v. Kaplan,* 177 F.3d 1253, 1258 (11th Cir. 1999) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). With respect to futility, the law of this Circuit is clear that "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1263 (11th Cir. 2004). "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.,* 198 F.3d 815,

822 (11th Cir. 1999). When an amended complaint fails to state a claim upon which relief can be granted, it is futile. *Spanish Language Broadcasting System of Fla. v. Clear Channel Comm., Inc.,* 376 F.3d 1065, 1077 (11th Cir. 2004); *St. Charles Foods*, 198 F.3d at 822. Therefore, the granting of Charest's amended complaint would be an exercise in futility.

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that Plaintiff Charest's amended complaint be denied.[2]

**DONE** this the 12th day of March 2021.

*/s/ Katherine P. Nelson*
**UNITED STATES MAGISTRATE JUDGE**

---

[2] An alternate ground exists on which to deny the amended complaint. Although a § 1915(g) plaintiff is allowed to amend his complaint, *O'Connor v. Backman,* 743 F. App'x 373, 376 (11th Cir. 2018), there must demonstrated a sufficient nexus between the claims asserted and the imminent danger alleged in the original complaint. *Heidelberg v. City of Mobile Police Dep't,* CA No.18-0271-TFM-N, 2018 WL 4934086, at *1 (S.D. Ala. Oct. 11, 2018) (unpublished) (denying the amended complaint). Otherwise, "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." *Pettus v. Morgenthau,* 554 F.3d 293, 297 (2d Cir. 2009). In the present action, the nexus does not exist between the imminent danger of serious physical injury from Covid-19 at Fountain and the declaratory and injunctive relief requests for Covid-19 testing and preventive supplies in the original complaint and the amended complaint's claims based on inmate-on-inmate violence, realizing, however, one of the contributing factors in both situations is the alleged overcrowding. For this other reason, the amended complaint is due to be denied.

Furthermore, in the amended complaint, Plaintiff refers to *USA v. State of Alabama and ADOC, et al.*, 2:20-cv-01971-RDP (N.D. Ala., filed Dec. 9, 2020.). (*Id.* at 9, PageID.475). A review of the DOJ's complaint in that action shows Plaintiff's claims in the amended complaint are being addressed in that action. (Doc. 1, PageID.1).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.